UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RYAN CODDINGTON,<br><br>      Plaintiff<br><br>v.<br><br>RICHARD CABRERA, et. al.,<br><br>      Defendants | Case No.: 3:17-cv-00256-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 18, 19 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 18.) Defendants filed an Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment. (ECF No. 19, video manually filed.) Plaintiff filed a reply/response to Defendants' cross-motion. (ECF No. 21.) Defendants filed a reply in support of their cross-motion. (ECF No. 23.)

After a thorough review, it is recommended that Plaintiff's motion be denied and Defendants' cross-motion be denied as there are genuine disputes as to material facts concerning whether the force used by Defendants was objectively reasonable or unreasonable.

**I. BACKGROUND**

Plaintiff is currently an inmate in the custody of the Nevada Department of Corrections (NDOC), and is proceeding pro se with this action under 42 U.S.C. § 1983. (Compl., ECF No. 7.)

The events giving rise to this action took place while Plaintiff was a pretrial detainee housed at the Lyon County Jail Complex in Yerington, Nevada. (*Id.*)

On screening, the court allowed Plaintiff to proceed with a Fourteenth Amendment excessive force claim (alleged in Counts I, II and III) against defendants Deputy Jack Sobol, Deputy Herbert Parada, and Sergeant Richard Cabrera, related to an incident that occurred in the Lyon County Jail Complex on April 30, 2015. (Screening Order, ECF No. 6.)

Plaintiff moves for summary judgment, arguing there is no dispute as to any material fact and he is entitled to judgment as a matter of law. Defendants also argue there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. Alternatively, Defendants contend they are entitled to qualified immunity.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

*See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely

on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Legal Standard**

A pretrial detainee alleging excessive force was used against him must prove that the force "purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 1473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court must determine objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id*. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security." *Id*. (alteration original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

4

This Supreme Court explained that this standard protects the "officer who acts in good faith[,]" recognizing that "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Id*. at 2474 (quoting *Graham*, 900 U.S. at 397).

The court may take into account the following non-exhaustive list of factors as bearing on reasonableness: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 2473 (citing *Graham*, supra, at 396).

The Supreme Court acknowledged that "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*. at 2474 (alteration original) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

**B. Facts**

Both parties rely on the video of the incident as well as the sworn testimony given by Deputies Sobol and Parada at the preliminary hearing for the criminal charges brought against Plaintiff in connection with the incident.[1]

///

///

---

[1] The charges were ultimately dismissed. Defendants' cross-motion asserts that the charges were dismissed because Plaintiff was ultimately convicted of murder, the crime for which he was originally detained in the jail. Plaintiff's submitted the motion for dismissal, which states that dismissal was requested because while there was sufficient evidence to initially charge and proceed, evidentiary problems had arisen which precluded a finding of proof beyond a reasonable doubt. (ECF No. 18 at 221.)

5

### 1. Plaintiff's Version of Events

Plaintiff asserts that on April 30, 2015, at 10:23:13 p.m., during a linen exchange, Plaintiff displayed his arms at his sides with his hands open. At 10:23:20, Parada pushed a linen cart out of the way, and defendant Sobol pushed a can out of the way, and then both defendants rushed Plaintiff. Plaintiff reacted to their approach by punching Parada in the face with his left hand. Plaintiff then backed away, and Parada pulled his taser out and aimed it at Plaintiff's head. Plaintiff tried to avoid being hit by the taser. The altercation spilled into the interlock (which is described in the preliminary hearing transcript as the lobby area of the cell block). Parada then aimed the taser at Plaintiff's head from three feet away. Plaintiff claims that Parada discharged the taser at Plaintiff's head, and then "pistol whip[ped]" Plaintiff with the taser three times. Plaintiff then re-entered the cell block. Then, Plaintiff pushed Parada and Sobol away to stop the attack. Plaintiff contends that Parada then "pistol whipp[ed]" Plaintiff with the taser five additional times. Plaintiff then fell the floor on his back. He claims that with his back to Sobol, defendant Sobol proceeded to punch Plaintiff in the head 10 times. While Sobol was holding and punching Plaintiff, defendant Parada kicked Plaintiff in the head three times. Parada and Sobol then held Plaintiff down while Sobol punched Plaintiff in the head. Plaintiff contends that he then curled into a ball, and Sobol stopped punching Plaintiff and placed him in handcuffs.

Then defendant Cabrera arrived and sat on Plaintiff's folded legs, and then on his upper back, and punched Plaintiff in the rib area. Plaintiff was then picked up and his head was used to open a closed door.

In sum, Plaintiff argues that Defendants used excessive force when: Parada "pistol whipp[ed]" Plaintiff with the taser; he was excessively punched and kicked in the head; was

6

punched in the ribs while restrained; and when his head was used to open the door. He claims that he suffered injuries as a result.

**2. Defendants' Version of Events**

According to Parada and Sobol, they were attempting to carry out a linen exchange on April 30, 2015, when Plaintiff attacked Parada. Specifically, they assert that they inspect linens for missing pieces, alterations or cuts in the linens, and during this exchange it was discovered a piece was missing out of one of Plaintiff's linens: he had removed a large section of the sheet. They attempted to question Plaintiff, and Plaintiff denied altering the sheets and said he received them that way. Deputy Parada directed Plaintiff to stop altering linens. During the conversation, Deputy Sobol made a comment that Plaintiff should start acting like an adult[2], and in response Plaintiff became angry and clinched his fists and raised them in an aggressive manner. They approached Plaintiff, and he took a few steps back and then unexpectedly punched Parada in the face with his left hand. In response, Parada went for his taser and attempted to deploy it, but Plaintiff charged Parada and punched him. The taser prongs ultimately hit Parada's arm and bounced off, hitting the ground.

The fight progressed into the interlock room, with both deputies giving chase. Plaintiff remained in a fighting stance. Sobol then deployed his "OC spray" (pepper spray) to incapacitate Plaintiff, but he was "zigzagging" and Sobol was unable to hit Plaintiff. As a result, Parada was also hit with the pepper spray. Plaintiff eventually moved to the front of the entry door to the cell block and Parada pushed him back into the cell block. Then, Parada rushed Plaintiff and attempted

---

[2] At various points in the testimony given at the preliminary hearing, it was discussed that Sobol said something to the effect of "stop acting like a two-year old" or that he would be treated like a two-year old. In fact, Plaintiff's complaint alleges that Sobol said the destruction of property would not be tolerated and he would treat Plaintiff like a two-year old. To this, Plaintiff admits in the complaint that he responded: "I can act like f***ing two-year old."

7

to grab and subdue him, but he could not because Plaintiff was oily from the pepper spray. During the event, Parada and Plaintiff exchanged punches. Eventually, Plaintiff fell to the ground and the deputies got on top of him to limit his movement. At that point, Parada and Sobol were having trouble breathing and their vision was blurred from the pepper spray. Sobol eventually got Plaintiff to the ground in the cell block and was attempting to gain control of his hands, but Plaintiff continued to fight. They had to utilize additional hands-on methods to gain control and subdue Plaintiff. Eventually, Parada place his taser near Plaintiff and told him to stop fighting or he would be tased. Plaintiff became passive and stopped fighting.

Sergeant Cabrera subsequently arrived to assist Sobol and Parada. Cabrera folded Plaintiff's legs into a cross-fold and put his weight on them to secure Plaintiff's movement. Plaintiff started to resist and fight with Cabrera. Cabrera then applied a short punch to the ribs to get Plaintiff to stop resisting. Additional officers arrived to assist, and Plaintiff was eventually placed in a safety cell.

Parada and Sobol were treated for minor injuries at South Lyon Medical Center.

**C. Analysis**

Preliminarily, Plaintiff argues that Defendants' motion should be denied because they failed to file a statement of undisputed facts. Defendants point to their factual background section which states the facts on which they rely to support their opposition and cross-motion: the sworn testimony and video evidence. They contend this complies with Rule 56 and Local Rule 56-1.

Plaintiff relies on Federal Rule of Civil Procedure 56 and Local Rule 7056. Local Rule 7056 is the Local Rule for the United States Bankruptcy Court for the District of Nevada, that pertains to summary judgments in bankruptcy court, and does not apply to this civil rights action filed in the United States District Court for the District of Nevada.

Federal Rule of Civil Procedure 56 requires a party asserting a fact cannot be or is genuinely disputed to support the assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence of presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). Local Rule 56-1 states that a motion for summary judgment and response must "include a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission or other evidence on which the party relies."

Defendants' response/cross-motion for summary judgment contains a section clearly titled "factual background" which describes Defendants' version of events, and cites to the evidence supporting those facts. Therefore, Defendants have adequately complied with Rule 56 and Local Rule 56-1, and their response and motion will not be disregarded on that basis.

Substantively, Plaintiff argues that Parada and Sobol applied excessive force without utilizing any form of verbal command. He contends that Parada pistol whipped him; he was excessively punched in the head; was kicked in the head while being restrained; and, was punched in the ribs while restrained. He also asserts that Cabrera assaulted Plaintiff while he was restrained.

Defendants argue that Plaintiff was the indisputable aggressor, and continued to fight them, refused to comply with commands, and failed to stop resisting. To keep the situation from escalating they employed both pepper spray and tasers, which were ineffective. When they themselves were limited physically by the effects of the pepper spray, they were required to use physical force to gain control.

The parties obviously dispute whether the force used was reasonable. In particular, Plaintiff disputes that it was reasonable for Parada to hit him with the taser, for Parada and Sobol to punch

and kick him while he was restrained, and for Cabrera to punch him in the rib while restrained. Defendants maintain that the force used was reasonable; Plaintiff constituted a threat and was actively resisting; and, the force used was no more than was necessary to restrain Plaintiff. Each side contends that the video supports their position.

The court has reviewed the video, and points out there is no audio. Deputy Parada is identified in the evidence as the deputy wearing the hat initially. It appears that Plaintiff is holding up a black sheet, and a conversation occurs. Then Plaintiff appears to drop the sheet and lifts his arms up and out to the sides. (10:23:14.)[3] He puts them back down, and at that point (10:23:19-20) the officers start walking toward Plaintiff and Plaintiff moves toward the officers, and using his left-hand Plaintiff punches Deputy Parada in the face (10:23:21). Plaintiff then initially moves backward, and Deputy Parada appears to reach for his taser and points it toward Plaintiff. As he is doing so, Plaintiff starts moving toward Parada and throws punches at him, forcing Parada to go backward toward the wall. Then the confrontation moves into the interlock area at about 10:23:27.

In the interlock area, Deputy Parada has his taser pointed at Plaintiff, and then Parada and Sobol attempt to catch Plaintiff who essentially runs in a circle in the interlock. Deputy Parada does swing the taser at Plaintiff, but it is not clear whether he makes contact or not.

They come back into the cell block area a few seconds later (10:23:31). Plaintiff appears to be moving backwards, with Parada chasing him, and Plaintiff backs into a cart that was near the wall. There is pushing and a struggle involving Sobol, Parada and Plaintiff, but it is difficult to see

---

[3] The court will refer to the time stamp from the video when it seems helpful for a point of reference. The videos provide have access to footage from multiple cameras (i.e., the camera at one angle of the cell block, and the camera from another angle from the cell block, and the camera in the interlock area), but it appears that the time is accurate for each of the camera vantage points. The court will not differentiate between the cameras in its analysis and instead will provide an overview of what occurred after having viewed the incident from all of the different camera angles.

if anyone, or who, is throwing punches at that point. Plaintiff manages to dodge past them and the deputies chase him. Plaintiff then falls to the ground, and Parada and Sobol rush toward him. It does appear he is being kicked and possibly punched, but again it is difficult to tell for sure in the video. In addition, there is no audio to tell whether any commands are being given or what else is being said. The struggle continues while Plaintiff is on the ground and Parada and Sobol are above him. It looks like Plaintiff could possibly be punched while he is on the ground, but again, it is not clear from the video and the court has no context of what was being said and cannot tell for certain whether Plaintiff was resisting. Sobol then appears to get control of one of Plaintiff's arms/hands.

At that point (approximately 10:24:38), Cabrera enters the room, and goes over to where Plaintiff is on the ground. Parada gets up and leaves the room, but the court cannot tell from the video what action Cabrera takes; whether Plaintiff is still resisting; or, what is being said. Another officer enters at 10:25:45, but goes out of the view of the camera. Cabrera then appears to get up and leave the room. At approximately 10:29:40, Plaintiff is picked up from the ground, in restraints behind his back, and is walking bent half-way over. Another person arrives, and Plaintiff is escorted out of the room through the interlock area, still bent half-way over. The court does not observe Plaintiff's head being used to open a door, as Plaintiff suggests.

In sum, there are genuine disputes as to material facts that are cannot resolved by viewing the video. While it appears that much of the initial use of force ( deploying the taser, and the use of pepper spray) was objectively reasonable given that Plaintiff punched Parada and gave chase, it is not clear whether the other uses of force at issue (i.e., hitting Plaintiff with the taser, and subsequent punching and kicking) were reasonable. Defendants maintain that Plaintiff was actively resisting and was still an aggressor, but Plaintiff contends that he was kicked and punched even after he was subdued. It is not possible to confirm either party's version of events from the

vantage point of the video, and there is no audio to give context to what can be seen on the video. Therefore, both parties' motions for summary judgment should be denied.

Defendants argue they are entitled to good faith qualified immunity because the evidence demonstrates they responded appropriately to a violent and aggressive inmate who attacked Parada and escaped the cell block, and continued to resist lesser alternatives to physical force. They maintain that they did not deviate from standard practices of the jail. They attempted to de-escalate but then Parada was attacked. When they employed lesser means of force, they were ineffective, and ultimately, they had to use hands-on force to restrain Plaintiff.

Given that significant factual disputes remain concerning what occurred during the incident, it is not appropriate to grant Defendants' request for qualified immunity at this time.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendants' Cross-Motion for Summary Judgment (ECF No. 19).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

///

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: May 28, 2019.

*William G. Cobb*
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE